1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

NEAL S. ZASLAVSKY, an individual,

     Plaintiff,

  v.

CONSUMER ATTORNEYS
ASSOCIATION OF LOS ANGELES, et
al.,

     Defendants.

Case No. 2:23-cv-06460-SPG-RAO

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS [ECF No. 30];
GRANTING DEFENDANTS' SPECIAL
MOTION TO STRIKE [ECF Nos. 32,
45]; GRANTING DEFENDANTS'
REQUEST FOR ATTORNEY'S FEES
AGAINST PLAINTIFF [ECF Nos. 32,
45]; AND DENYING PLAINTIFF'S
MOTION FOR SANCTIONS FOR
FAILURE TO COMPLY WITH RULE
11 OF THE FEDERAL RULES OF
CIVIL PROCEDURE AND LOCAL
RULE 7-3 [ECF Nos. 68, 69].**

Consumer Attorneys Association of Los Angeles ("CAALA"), and individual Defendants Minh Tri Nguyen, Esq., Ibiere Seck, Esq., Martin Isaac Aarons, Esq., Elizabeth Anne Hernandez, Esq., Christa Haggai Ramey, Esq., Danny Abir, Esq., Kathryn Marie Trepinkski, Esq., and Kwendi Moore (collectively, "CAALA Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6) and California Code of Civil Procedure section 425.16, for an order dismissing the CAALA Defendants from this action. Defendant David Hoffman moves, pursuant to California Code of Civil Procedure section 425.16, to strike the claims asserted against him. (ECF No. 45). Lastly, Plaintiff moves for sanctions for

failure to comply with Rule 11 of the Federal Rules of Civil Procedure and Local Rule 7-3 as to both William A. Munoz, Esq., and his firm, Freeman, Mathis & Gary LLP and Laurence P. Posner, his firm, and his client, David Hoffman.  (ECF Nos. 68, 69).

Having considered the parties' submissions, the relevant law, the record in this case, and the arguments of counsel during the hearing on the motions, the Court grants Defendants' Motion to Dismiss, grants the Defendants' Motion to Strike, and denies Plaintiff's Motion for Sanctions.

## I.    BACKGROUND

This Case arises out of Defendants Consumer Attorneys Association of Los Angeles ("CAALA") and its Board of Directors' decision to terminate Plaintiff Neal S. Zaslavsky's membership in CAALA following a May 15, 2023, list serve exchange between Plaintiff and the non-CAALA Board Member Defendants, Keith Allen and Stephen Mashney.

Defendant Consumer Attorneys Association of Los Angeles is a 501(c)(6) nonprofit Mutual Benefit Trade Association overseen and operated by an Executive Director and Board of Governors.  (ECF No. 36 at 2).  Membership is limited to plaintiff attorneys, their legal staff, law students, and affiliates such as mediators and vendors who provide goods and services to plaintiff trial attorneys.  *Id.*  Attorney members must be in good standing with the State Bar of California.  *Id.*

One of the benefits offered to members by CAALA is access to several online list serves related to work product, life, politics, new lawyers, women, and legal staff.  *Id*.  To access these list serves, members must review and agree to abide by the List Serve Rules and Joint Prosecution/Confidentiality Agreement ("List Serve Rules").  (ECF No. 43-2 at 2).  The List Serve Rules state, in relevant part: "PROHIBITED CONDUCT: Offensive, obscene, racist, sexist, inflammatory, libelous, threatening, abusive, harassing, pornographic, privacy invading, and/or hateful language is prohibited.  Any personal attack on another MEMBER in a message is prohibited." (ECF No. 43-2 at 4).

The List Serve Rules also set forth explicit sanctions for violations, stating in relevant part:

CAALA SANCTIONS

TEMPORARY SUSPENSION FOR VIOLATION:  If the CAALA
Executive Director, in his or her unlimited discretion, determines that a
MEMBER has failed to comply with or has violated any provision set forth
above, the MEMBER consents that the MEMBER shall be immediately and
without warning, suspended from the CAALA LIST SERVE for a period of
time as determined appropriate by the Executive Director, but in no event to
exceed the date of the second scheduled meeting of the Board of Governors.

REVIEW OF SUSPENSION: if the CAALA Executive Director has
determined that a MEMBER has failed to comply with or has violated any
provision set forth above, the Executive Committee shall review that
determination at the next meeting of the Executive Committee.  The Executive
Committee shall have unlimited discretion to determine whether a CAALA
LIST SERVE MEMBER's suspension should be rescinded, should be
extended, or whether to add additional sanctions.  The MEMBER has a right
to petition the Executive Committee and the BOG for review of any sanctions
which shall be decided by a majority vote.  (ECF No. 43-2 at 7).

CAALA's governing document is the Amended and Restated Bylaws ("Bylaws")
effective September 2021.  (ECF No. 43-1 at 2).  The Bylaws state that CAALA is open to
members in good standing with the State Bar of California or any other bar association
within the United States who are engaged in the practice of law as a profession.  *Id.*
Additionally, "[a]ny person, regardless of sex, race, religion, or ethnic background, who
supports the goal of this corporation and is committed to is objectives, shall be eligible for
membership in this corporation . . . ."  *Id.*

Of relevance here, Article 2, Section 10 of the Bylaws sets out the basis for
termination of membership with CAALA, providing, in relevant part:

Basis for Termination.  Membership in this corporation shall terminate
upon the occurrence of any of the following events or conditions:
Interests of Corporation. On a good faith finding by the Board of
Governors, made in accordance with this Section, that continued participation
by the member in this corporation as a member is not in the best interest of

this corporation and the furtherance of its purposes, such member's membership in this corporation shall terminate. The best interests of this corporation include the orderly, dignified, and harmonious conduct of its business; the preservation of its reputation, good will, character, and property; and adherence to its governing instruments, and policies and procedures determined by the Board of Governors. (ECF No. 43-1 at 4).

The Bylaws then go on to describe in detail the various "termination procedures" that members are due under the Bylaws.  CAALA will send notice to the member setting forth the proposal for termination, the reasons for it, the date on which the proposed termination shall become effective, and the date, time, and place of the hearing.  (ECF No. 43-1).  The member is then given an opportunity to be heard either orally or in writing, not less than five days before the effective date of the proposed termination.  (ECF No. 43-1 at 4).  Following the hearing, the Board of Governors decides if the member should be terminated.  *Id.*  Board decisions are "final," though the Bylaws allow that a member can seek reinstatement by petitioning the Board.  (ECF No. 43-1 at 5).

The conduct giving rise to the instant complaint occurred on May 15, 2023, via email on the CAALA Political Opinions and Discussion list serve.[1]  (ECF No. 79-3 at 17).  According to Plaintiff, Plaintiff participated in a "lively, and at times, heated, discussion on one of CAALA's list serves."  (ECF No. 1 at 11).  According to Plaintiff's Exhibit A, the relevant list serve was a "political" list serve.  *See* (ECF No. 79-3 at 17) ("(caala-pol list serve)").  The discussion centered around the candidacy of Florida Governor Ron

---

[1] When ruling on a Rule 12(b)(6) motion, the Court "accept[s] all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  The Court Notes that the Complaint appears to only contain excerpts of the conversations that occurred on the list serve on May 15, 2023.  However, because the Complaint "necessarily relies" on the more complete conversations that took place, and no party for purposes of the pending motions is contesting the authenticity of the communications offered in connection with the pending motions, the Court will also consider the more complete conversations contained in the parties briefing materials and associated exhibits, *See Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001), and will take judicial notice of the bylaws and other materials not in dispute.

DeSantis for President of the United States.  *Id*.  The discussion was started by Defendant Hoffman, who referred to DeSantis as "Ron DeSadist." *Id*.  The Conversation, then involving Defendants Allen, Habbas, Hoffman, and Mashney, turned into what the Complaint describes as "a sharp and ill-informed criticism of the State of Israel." (ECF No. 1 at 12).  Plaintiff responded to the email conversation, referring to several of the contributors as "professional Palestinian terrorists." (ECF No. 1 at 14); (ECF No. 79-3 at 17-18) ("I should have known that the professional Palestinian terrorist would chime in with his Jew-hatred . . .Why don't you just move to Gaza so you can be with the other hateful soulless scum who share your distorted and despicable view of the Jewish people and Medinat Yisrael.").  Defendant Allen then responded to the list serve with the following: "My friend, you started with the ad-hominem attacks.  I'm just responding in kind . . . since it is apparently the only language you understand.  Seriously, get a life.  I have neither the time, nor the desire to interact with someone so narrow minded as to claim that only one side is to blame, in THAT [i.e., the Israel-Palestine conflict] especially.  Only a MORON would subscribe to such a stupid position." (ECF No. 79-3 at 12).  Plaintiff then alleges that a threat was made on his life by the following message from Defendant Allen: "go back and read my message.  I didn't say anything close to that . . . .  I believe what I DID say was BOTH SIDES HAVE COMMITTED ATROCITIES.  Don't try and corrupt my written words to suit your stupidity.  You try to pull that shit with me and I will snap you back so hard you'll think you're a first year law student again." (ECF No. 79-3 at 14).

As a result of this list serve discussion, CAALA's Listserv Committee reviewed the May 15, 2023, conversation string and determined that Plaintiff, Keith Allen, and Stephen Mashney should be sanctioned.  The committee suspended Plaintiff and Allen from posting on the list serves for 30 days and issued a warning to Mashney. (ECF No. 31 at 12).  On May 16, 2023, the Listserv Chair Tal Rubin circulated an e-mail to all CAALA members regarding the May 15, 2023, exchange and noted the disciplinary actions taken against the three members.

Following receipt of Plaintiff's notice of 30-day suspension from Executive Director Moore, Plaintiff emailed Moore stating in full:

> Kwedi,
>
> I don't know you, and quite frankly, I don't care to know you.  When Stuart Zanville ran this organization, we didn't coddle Jew-haters and anti-Semites.  You appear to have very different modus operandi.  It is my understanding that your personal beliefs more closely align with the Jew-hating anti-Semites who attacked me, rather than the people like me who closely align ourselves with the famous words of the Rev. Dr. Martin Luther King, Jr., who famously equated anti-Zionism with anti-Semitism.
>
> I am very comfortable being on the same side as Dr. King, and I am never going to back down when a Jew-hating, terrorist-supporting anti-Semite attacks me, Israel, or the Jewish people.  Shame on you for supporting such disgusting behavior.
>
> And you had **better** have issued a far more severe "punishment" to both Keith Allen and Stephen Mashney. Who made several "inflammatory, libelous, threatening, abusive, harassing,…and…hateful…personal attack[s] on" me.  If I find out differently…and I will find out… be prepared for prompt and swift legal action.  I don't take lightly your libelous statements about me which you have published to multiple third parties.  **By this email, I am putting you on notice of potential litigation and direct you to preserve ALL of your communications – including but not limited to e-mails and facsimiles – related to this matter.**
>
> Govern yourself accordingly, Neal S. Zaslavsky, Esq., CEO and Managing Attorney.

(ECF No. 43-8 at 2) (emphasis in original).

On June 5, 2023, CAALA's Executive Committee convened for an emergency meeting to discuss, among other things, the termination of Plaintiff's membership in light of the events on the list serve and the accompanying email to Moore.  Following the meeting, CAALA provided notice to Plaintiff via e-mail that the Executive Committee was proposing that Plaintiff's membership be terminated, the reason for the termination, and

the date and time of the hearing where the Board of Governors would vote as specified in the Bylaws.  (ECF No. 43-10 at 2-3).

Plaintiff submitted his written response to the hearing notice, and he appeared via Zoom at the June 15, 2023, Board of Governors meeting.  (ECF No. 31 at 14).  Plaintiff was given approximately six minutes to present his position for not terminating his membership and then spent the remainder of the following 50 minutes answering questions from a variety of members.  (ECF No. 43-12 at 3).  According to the meeting minutes, the motion to terminate Plaintiff's membership in CAALA was 41 in favor, 2 voting against, and 7 present not voting.  (ECF No. 43-12 at 3).  After having his membership revoked, the committee then voted unanimously that Plaintiff is not permitted to attend any CAALA events, even as a non-member because of "safety concerns" involving the Plaintiff.  (ECF No. 43-12 at 3).

On August 8, 2023, Plaintiff filed the instant action alleging (1) unlawful discrimination in public accommodation, in violation of 42 U.S.C. § 2000a; (2) unlawful discrimination, in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52; (3) discrimination in business dealings, in violation of Cal. Civ. Code §§ 51.5; (4) threats of violence in violation of the Ralph Civil Rights Act, Cal. Civ. Code §§ 51.7; (5) violations of the Bane Act, Cal. Civ. Code §§ 52.1; (6) intentional interference with prospective economic relations; and (7) negligent interference with prospective economic relations.

On September 7, 2023, the CAALA Defendants moved to dismiss the Complaint and also filed a special motion to strike the complaint.  (ECF Nos. 30, 32).  On September 8, 2023, Defendant Hoffman also filed a special motion to strike the complaint, (ECF No. 45), and joined in the CAALA Defendants' special motion to strike.  (ECF No. 46).  On October 4, 2023, Plaintiff filed Motions for Sanctions pursuant to Fed. R. Civ. P. Rule 11 and Local Rule 7-3 against the CAALA Defendants and Defendant Hoffman.  (ECF Nos. 68, 69).  The CAALA Defendants and Defendant Hoffman oppose.  (ECF Nos. 84, 86). [2]

---

[2] Defendant Keith LaSalle Allen timely joined the CAALA Defendants in their motions (ECF Nos. 30, 32) to dismiss this action and to strike.  *See* (ECF Nos. 88,).

## II.   LEGAL STANDARDS

### A.   Anti-SLAPP Motion to Strike

California's anti-SLAPP statute, codified at California Code of Civil Procedure section 425.16, allows a defendant to file a special motion to strike a complaint that is brought primarily to chill the valid exercise of free speech.  Such motions may be brought in federal court against a plaintiff's state law claims.  *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 970-73 (9th Cir. 1999).  Section 425.16 involves a two-step inquiry.  First, the "moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech."  *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).  Second, once the defendant satisfies its threshold burden, the burden shifts to the plaintiff to produce admissible evidence establishing a probability that it will prevail on the merits of its claims.  Code Civ. Proc. § 425.16(b); *Sweetwater Union High School Dist. V. Gilbane Building Co.*, 6 Cal.5th 931, 947 (2019); *Chavez v. Mendoza*, 94 Cal.App.4th 1083, 1087 (2001).   To establish a probability of success on the merits, the plaintiff must demonstrate that his claims are both legally viable and supported by a prima facie showing of facts sufficient to support a favorable judgment if the evidence submitted by the plaintiff is credited.  *Matson v. Dvorak*, 40 Cal.App.4th 539, 548 (1995).

In ruling on an anti-SLAPP motion, a federal court uses the framework for a Federal Rule of Civil Procedure 12(b)(6) motion to determine whether a plaintiff has satisfied the second prong on the anti-SLAPP analysis, i.e., whether the plaintiff has demonstrated a probability of prevailing on the merits of his or her state law claim.  *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  For purposes of this inquiry, the trial court "considers the pleadings and evidentiary submissions of both the plaintiff and defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the

1   motion defeats the plaintiff's attempt to establish evidentiary support for the claim."
2   *Soukup v. Law Offices of Herbert Hafif*, 39 Cal.4th 260, 291 (2006).  Here, the plaintiff
3   need only establish that his or her claim has "minimal merit" to avoid being stricken as a
4   SLAPP.  *Id.*  However, if the plaintiff cannot meet his or her burden, the court must strike
5   all defective claims.

6        Upon concluding that a claim should be stricken under the anti-SLAPP statute,
7   courts are precluded from granting plaintiff leave to amend his or her complaint, as doing
8   so would undermine the statute by providing the plaintiff with a ready escape from anti-
9   SLAPP's quick dismissal remedy.  *Simmons v. Allstate Ins. Co.*, 92 Cal.App.4th 1068,
10   1073 (2001).  A defendant who prevails on its anti-SLAPP motion "shall" be entitled to
11   recover its attorneys' fees and costs. Code Civ. Proc. § 425.16(c).

12   **B.      Rule 12(b)(6)**
13        A complaint must contain "a short and plain statement of the claim showing that the
14   pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim
15   is and the grounds upon which it rests."  Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*,
16   550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, "a complaint
17   must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is
18   plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550
19   at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows
20   the court to draw the reasonable inference that the defendant is liable for the misconduct
21   alleged."  *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks
22   for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal
23   quotation marks omitted).  When ruling on a Rule 12(b)(6) motion, the Court "accept[s] all
24   factual allegations in the complaint as true and construe[s] the pleadings in the light most
25   favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).
26   "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable
27   legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v.
28   Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  Should a court dismiss

certain claims, "[l]eave to amend should be granted unless the district court 'determines that the pleading could not possibly be cured by the allegation of other facts.'" *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)).

## III.   DISCUSSION

### A.   Defendants' Anti-SLAPP Challenge to Plaintiff's Second, Third, Sixth, and Seventh Claims

CAALA Defendants, with whom Defendant Hoffman joins, and Defendant Hoffman filed anti-SLAPP motions seeking to strike Plaintiff's second, third, sixth and seventh claims.  *See* Code Civ. Proc., § 425.16. (ECF Nos. 32 and 45).  According to Defendants, the "very actions Plaintiff challenges in the Complaint as they relate to the Defendants constitute protected activity under Code of Civil Procedure § 425.16, as they are written or oral statements 'made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law' and/or 'made in connection with an issue under consideration or review by … [an] official proceeding authorized by law.'"  (ECF No. 31 at 17).  Likewise, the challenged conduct falls under subdivision (e)(3) since the Board of Governors meeting where the issue of Plaintiff's termination would be discussed was open to any member of CAALA.  (*Id.*).  Defendants argue that Plaintiff's second (unlawful discrimination in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52), third (discrimination in business dealings, in violation of Cal. Civ. Code §§ 51.5), sixth (intentional interference with prospective economic relations), and seventh (negligent interference with prospective economic relations) arise from Defendants' actions taken in response to Plaintiff's May 15, 2023, communication to Executive Director Kwedi Moore after communicating to Plaintiff his 30-day suspension.  (ECF No. 31 at 18).

As stated previously, to succeed on an anti-SLAPP motion, Defendants must make an initial prima facie showing that Plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or speech.  California courts have "interpreted the anti-SLAPP statute's 'arising from' language to mean that a claim is based on whatever conduct

constitutes the 'specific act[ ] of wrongdoing' that gives rise to the claim." *Jordan-Benel v. Universal City Studios*, Inc., 859 F.3d 1184, 1190 (9th Cir. 2017) (alteration in original) (quoting *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 671, 35 Cal.Rptr.3d 31 (2005)). "Put another way, a court focuses its anti-SLAPP analysis on the specific conduct that the claim is challenging." *Id.* (citing *Wang v. Wal-Mart Real Estate Bus. Trust*, 153 Cal. App. 4th 790, 809, 63 Cal.Rptr.3d 575 (2007)).

Defendants argue that the conduct of CAALA, the Board Member Defendants, and Hoffman, as Director of the Board, in addressing the events in and around May 15, 2023, was all performed in connection with an official proceeding authorized by law. *See* § 425.16(e)(1), (2). According to Defendants, this CAALA board proceeding was "authorized by law" because it was conducted pursuant to California's Nonprofit Mutual Benefit Corporation Statutes and CAALA Bylaws. Importantly, CAALA's Bylaws are modelled on and follow Corporations Code section 7341. (ECF No. 31 at 18). Additionally, Defendants assert "the votes cast by the Board members during this process are the quintessential example of free speech protected by Code of Civil Procedure section 425.16." (ECF No. 31 at 18). Following *Schroeder v. Irvine City Council*, "voting [in an official proceeding] is conduct qualifying for the protections of the First Amendment." 97 Cal.App.4th 174, 183 fn. 3 (2002).

Plaintiff argues that Defendants "urge an overbroad reading of protected activity – a view, which if accepted by this Court, would ultimately immunize business establishments from *any* suit from their unlawful discriminatory conduct against *any* third party." (ECF No. 79 at 27).

Here, the Court finds that Defendants have met their burden to show that CAALA Defendants and Defendant Hoffman, insofar as Plaintiff's claims allege conduct relating to the CAALA proceedings, were engaged in a protected activity under § 425.16(e)(1) and (2).

An issue is "under consideration" by an executive, legislative, judicial, or any other official proceeding authorized by law as required by § 425.16(e)(1), (2), if it is "kept before the mind" of an official body, and "given attentive thought, reflection, [or] meditation" by it. *Maranatha Corrections, LLC v. Dep't of Corrections and Rehabilitation*, 158 Cal.App.4th 1075, 1085 (2008) (citing *Braun*, 52 Cal.App.4th at 1036 (internal quotation marks omitted)). An issue is "under review" if it is subject to inspection or examination. *Id.* Similarly, the California Supreme Court has held that a private organization's proceedings constitute an official proceeding authorized by law if the proceedings display properties like those paradigmatic of a legal proceeding, e.g., providing an opportunity for appeal. *Kibler v. N. Inyo Cnty. Loc. Hosp. Dist.*, 39 Cal. 4th 192, 197, 138 P.3d 193, 196 (2006) as modified (July 20, 2006) ("[T]he Legislature has accorded a hospital's peer review decisions a status comparable to that of quasi-judicial public agencies whose decisions likewise are reviewable by administrative agencies.").

Here, Defendants argue that the procedures at issue in this action are authorized by law. The Court agrees. For instance, Plaintiff was given notice and an opportunity to be heard in accordance with the Bylaws, which are modeled explicitly on Corporations Code section 7341. Moreover, Plaintiff had advanced notice of the policies and procedures in use at CAALA, and there is no dispute that these procedures were followed. *See* Cal. Corp. Code § 7341. Finally, there is little question that this issue was under consideration by the proceeding and was given attentive thought and reflection. Indeed, Plaintiff was given an opportunity to submit a written response to the hearing notice, was given time to present his position to the Board, and was questioned for roughly 50 minutes. *See* (ECF No. 43-12 at 3).

Because the alleged conduct was performed in connection with an official proceeding authorized by law – namely, the CAALA termination hearing – the conduct of CAALA Defendants and Defendant Hoffman, insofar as it relates to the board proceedings, constitutes protected activity under Code of Civil Procedure § 425.16(e)(2). The Defendants have therefore met their prima facie burden to show that Defendants were

engaged in a protected activity under § 425.16.  As such, this Court GRANTS Defendants'
Motions to Strike the second, third, sixth and seventh causes of action under California
Code Civ. Proc., § 425.16.  Upon concluding that a claim or claims should be stricken
under the anti-SLAPP statute, courts are precluded from granting plaintiff leave to amend
his or her complaint, as doing so would undermine the statute by providing him or her with
a ready escape from anti-SLAPP's quick dismissal remedy. *Simmons v. Allstate Ins. Co.*,
92 Cal.App. 4th 1068, 1073 (2001).

Finally, a defendant who prevails on an anti-SLAPP motion is entitled to recover
attorney's fees and costs.  Cal. Civ. Proc. Code § 425.16(c)(1).  The Court therefore
GRANTS Defendants' request for attorney's fees and costs in this Action.  Because several
of the CAALA Defendants and Defendant Hoffman have joined in the various anti-SLAPP
motions to strike, the Court requests supplemental briefing of no more than five (5) pages
addressing the attorney's fees and costs accrued in this action.[3]

**B.     CAALA Defendants' Motion to Dismiss Plaintiff's First Claim for
        Unlawful Discrimination in Public Accommodation Pursuant to 42
        U.S.C. § 2000a**

Title II of the Civil Rights Act of 1964, 78 Stat. 243, 42 U.S.C. § 2000a et seq.
prohibits public accommodations from discriminating on the basis of race, color, religion,
or national origin. § 2000a(a).  Plaintiff alleges, and CAALA Defendants deny, that
CAALA discriminated against him "on the basis of religion, treated him disparately
because of his religion and the beliefs and values associated with that religion, and denied
[Plaintiff] equal access to a public accommodation. (ECF No. 1 at 24).

CAALA Defendants argue that section 2000a does not apply to CAALA since
CAALA is a private club or organization.  (ECF No. 29 at 11).  Under § 2000a(e), "private
clubs or other establishment not in fact open to the public" do not fall under the
requirements of subchapter 2000a.  Second, CAALA Defendants argue that Plaintiff has
not alleged discriminatory intent on the part of CAALA.

---

[3] The Court notes that Defendants may submit joint supplemental briefing.

Here, the Court agrees with CAALA Defendants that Plaintiff has failed to allege facts that, if true, would qualify CAALA as a business establishment or public accommodation under § 2000a.  According to Plaintiff, "CAALA has multiple businesslike attributes, including its complex structure, large staff and budget, multiple events, and extensive publishing." (ECF No. 1 at 24).  Plaintiff further alleges that CAALA is a "permanent commercial force or organization." *Id.*  However, Plaintiff does not allege, as is necessary, that CAALA is open to "the public at large." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

According to the Ninth Circuit, "Title II explicitly covers places, establishments, lodgings and facilities open to the public at large.  Fifteen examples of such "places of public accommodation" are offered within the text of the law: inns, hotels, motels, restaurants, cafeterias, lunch rooms, lunch counters, soda fountains, retail establishments, gas stations, movie houses, theaters, concert halls, sports arenas and stadiums. 42 U.S.C. § 2000a.  Nowhere does the statute refer to membership organizations, or otherwise indicate congressional intent to regulate anything other than public facilities." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 755 (9th Cir. 1994).

According to CAALA Defendants and uncontested by Plaintiff, CAALA is a private bar association that restricts membership to a segment of practicing attorneys in good standing who represent plaintiffs and do not represent certain classes of defendants.  Citing CAALA's website, CAALA Defendants evidence that CAALA – far from being open to the public at large – allows membership only after meeting the following requirements: "you [i.e., member-applicant] and anyone associated with your firm primarily represent plaintiffs and do not defend on an ongoing basis any insurance company(ies), manufacturer(s), governmental entity(ies), common carrier(s), corporation(s), public utility(ies) or other organization in personal injury, wrongful death, workers' compensation, employment or other consumer-related litigation." (ECF No. 29 at 12).

Thus, accepting all factual allegations in the complaint as true and construing the pleadings in the light most favorable to the nonmoving party, the Court finds that Plaintiff

has failed to plead sufficient facts to support a cognizable legal theory for his first claim. Moreover, because "no set of facts can be proved under [an amendment to the pleadings] that would constitute a valid and sufficient claim," the Court GRANTS without leave to amend CAALA Defendants' Motion to Dismiss under Rule 12(b)(6) Plaintiff's first claim of unlawful discrimination in public accommodation in violation of 42 U.S.C. § 2000a. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

### C. CAALA Defendants' Motion to Dismiss Plaintiff's Second Claim for Unlawful Discrimination Under the Unruh Act Civil Code §§ 51 and 52.

Although the Court has already struck Plaintiff's Second claim under the California anti-SLAPP statute, insofar as conducted alleged in that claim is not covered by the Anti-SLAPP statute, the Court addresses the merits of the claim.

For his Second Claim, Plaintiff alleges that CAALA, by and through its termination of Plaintiff's membership and banning him from being present at any CAALA events, has unlawfully discriminated against Plaintiff, thereby denying him of full and equal accommodations, advantages, privileges, and services guaranteed by the Unruh Act, Cal. Civ. Code §§ 51, 52.

The Unruh Act entitles all persons in California to "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments" irrespective of, among other things, religious belief. Cal. Civ. Code § 51. Section 51, subd. e(4) defines "religion" as including all aspects of religious belief, observance, and practice. Cal. Civ. Code § 51. To plead a claim for violation of the Unruh Act, a plaintiff must allege facts that, if true, establish: (1) defendant denied plaintiff full and equal accommodations, advantages, facilities, privileges, or services; (2) that a substantial motivating reason for defendant's conduct was plaintiff's membership in a protected class; (3) that plaintiff was harmed; and (4) that defendant's conduct was a substantial factor in causing plaintiff's harm. *Nia v. Bank of Am., N.A.*, 603 F. Supp 3d 894, 906 (S.D. Cal. 2022), citing *James v. US Bankcorp,* No. 5: 18-cv-01762-Fla (Spx), 2021 WL 4582105, at *6 (C.D. Cal. June 4, 2021).

CAALA Defendants argue because CAALA is a "private mutual benefit non-profit bar association," it is not a business establishment, as defined under the Unruh Act. (ECF No. 29 at 13). Plaintiff opposes, arguing that CAALA – following *Bd. of Directors of Rotary Club Int'l v. Rotary Club of Duarte* – falls within the definition of "business establishment" as contemplated by the Unruh Act. 481 U.S. 537, 547 (1987). For reasons akin to those discussed in section B above, the Court here finds that CAALA is not a "business establishment," as contemplated by the Unruh Act.

Whether a defendant is a "business establishment" for purposes of the Unruh Act is a question of law. *Rotary Club of Duarte v. Bd. of Dirs.*, 178 Cal. App. 3d 1035, 1050, 224 Cal.Rptr. 213 (1986). The California Supreme Court has explained that the term "business establishment" should be construed "in the broadest sense reasonably possible." *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 78, 219 Cal. Rptr. 150, 707 P.2d 212 (1985) (internal quotation marks omitted). The Unruh Act Applies to any organization that is "classically 'public' in its operation"—for instance, one that "opens its . . .doors to the entire . . . youth population" of a city, or a "broad segment of the population," with "no attempt to select or restrict membership or access on the basis of personal, cultural, or religious affinity, as private clubs might do." *Id.* at 81 (emphasis omitted). The question for the Court is, then, whether CAALA is "classically public" in its operation. The answer is No.

As explained above, it is uncontested by the parties that CAALA is a private bar association with various requirements for membership. Unlike a restaurant, a club open to all "youthful males," or a school district, CAALA is open only to a segment of practicing attorneys in good standing who represent plaintiffs and do not represent certain classes of defendants. *See Yates v. East Side Union High Sch. Dist.*, No. 18-cv-02966-JD, 2019 WL 721313 (N.D. Cal. Feb. 20, 2019) (holding a school district qualifies as a "business establishment" under the Unruh Act); *Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 91, 707 P.2d 212, 224 (1985), as modified on denial of reh'g (Dec. 19, 1985) (holding that the Boys' Club of Santa Cruz is a business establishment covered by the Unruh Act).

Because CAALA lacks the marks of a traditionally or classically public entity (e.g., being open to a wide swath of the public, being open to all without qualification, not being restricted to some personal professional characteristic), CAALA is not a business establishment as contemplated by the Unruh Act.  *cf. Isbister v. Boys' Club of Santa Cruz, Inc.*, 40 Cal. 3d 72, 89, 707 P.2d 212, 223 (1985), as modified on denial of reh'g (Dec. 19, 1985) ("As we have seen, however, noncommercial organizations open *only* to such well-defined subgroups are not "public accommodations" and thus may not be "business establishments" covered by the Act").

Therefore, accepting all factual allegations in the complaint as true and construing the pleadings in the light most favorable to the nonmoving party, the Court finds that Plaintiff has failed to plead sufficient facts to support a cognizable legal theory under this claim.  Because of this, the Court hereby GRANTS without leave to amend CAALA Defendants' motion to dismiss under Rule 12(b)(6) Plaintiff's claim of unlawful discrimination in violation of the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, 52.

### D.    CAALA Defendants' Motion to Dismiss Plaintiff's Third Claim for Discrimination in Business Dealings, in Violation of Cal. Civ. Code § 51.5

Although the Court has already struck Plaintiff's Third claim under the California anti-SLAPP statute, insofar as conduct alleged in that claim is not covered by the Anti-SLAPP statute, the Court briefly addresses the merits of the claim.

For his Third Claim, Plaintiff alleges that he was "denied his full and equal rights to conduct business because of his Jewish religion" in violation of California Civil Code section 51.5.[4] (ECF No. 1 at 25).  The Ninth Circuit has held that § 51.5 "[o]n its face…appears to be aimed only at discrimination in relationships similar to the proprietor/customer relationship.  All the forbidden acts referred to except "discriminate"

---

[4] California Civil Code section 51.5 prohibits business to business discrimination: "No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state on account of any characteristic listed or defined in subdivision (b) and (e) of Section 51 " Cal. Civ. Code. § 51.5.

expressly refer to transactions of a proprietor/customer sort." *Strother v. S. California Permanente Med. Grp.*, 79 F.3d 859, 875 (9th Cir. 1996), as amended on denial of reh'g (Apr. 22, 1996), as amended on denial of reh'g (June 3, 1996).

Here, Plaintiff does not allege sufficient facts to show that CAALA or its Board of Governors or Executive Committee members discriminated, boycotted, blacklisted, refused to buy from or contract with Plaintiff based on his "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status." Cal. Civ. Code. § 51(b). Principally, the Complaint does not allege facts to demonstrate that Plaintiff stands in a customer-proprietor relationship to CAALA Defendants, or that any Defendant was attempting to enter a business relationship with Plaintiff. Therefore, accepting all factual allegations in the Complaint as true and construing them in the light most favorable to the nonmoving party, to the extent that any portion of Plaintiff's Third Claim remained after Defendants' motion to strike, the Court GRANTS CAALA Defendants' motion to dismiss the Third Claim with prejudice under 12(b)(6).

**E.**    **CAALA Defendants' Motion to Dismiss Plaintiff Sixth and Seventh Claims for Intentional and Negligent Interference with Prospective Economic Relations**

Although the Court has already struck Plaintiff's Sixth and Seventh Claims under the California anti-SLAPP statute, insofar as conducted alleged in those claims is not covered by the Anti-SLAPP statute, the Court briefly addresses the merits of those claims.

Plaintiff's Sixth and Seventh claims are for intentional IPER and negligent IPER, respectively. The elements of the claim for intentional IPER are: "(1) an economic relationship between the plaintiff and another, containing a probable future economic benefit or advantage to plaintiff, (2) defendant's knowledge of the existence of the relationship, (3) defendant's intentional conduct designed to interfere with or disrupt the relationship, (4) actual disruption, and (5) damage to the plaintiff as a result of defendant's acts." *Marin Tug & Barge, Inc. v. Westport Petroleum, Inc.*, 271 F.3d 825, 831 n.8 (9th

Cir. 2001) (citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 380 n.1 (1995)).  Further, the plaintiff must plead that the "defendant's interference was wrongful by some measure beyond the fact of the interference itself."  *Della Penna*, 11 Cal. 4th at 393.  A claim for negligent IPER has the same elements except that, instead of an intentional act, element three requires that the defendant had knowledge that the relationship would be disrupted if the defendant failed to act with reasonable care, and that the defendant failed to act with reasonable care.  *Redfearn v. Trader Joe's Co.*, 20 Cal. App. 5th 989, 1005 (2018).  A plaintiff alleging negligent interference with prospective business advantage "must identify with particularity the relationships or opportunities with which "[d]efendant is alleged to have interfered."  *Damabeh v. 7-Eleven, Inc.*, No. 5:12-CV-1739-LHK, 2013 WL 1915867, at *10 (N.D. Cal. May 8, 2013) ("Courts have held that, in order to state a claim for intentional [and negligent] interference with prospective business advantage, it is essential that the Plaintiff allege facts showing that Defendant interfered with Plaintiff's relationship with a particular individual.")

Here, the Court agrees with CAALA Defendants that, as pled, Plaintiff has not raised facts that, if true, substantiate the elements of these two claims.  In his Complaint, Plaintiff states that he "was in an economic relationship with both CAALA and various attorney members of CAALA, including but not limited to the more than one thousand attorneys who actively participate in CAALA's work product list serve and the nearly three thousand attorneys who attend CAALA's annual convention in Las Vegas."  (ECF No. 1 at 26-27). Plaintiff further alleges that he is now unable to participate in CAALA's "$200/hour mediator program."  *Id.*  First, under *Damabeh*, Plaintiff must allege facts showing that CAALA Defendants interfered with Plaintiff's relationship with a *particular individual*. Here, Plaintiff simply states that CAALA interfered with his ability to have business relationships with thousands of attorneys in CAALA.  This allegation is not sufficient. Moreover, even if Plaintiff can show that he is in an economic relation with every attorney-member of CAALA, termination of Plaintiff's membership is not alone sufficient to show that CAALA Defendants interfered with Plaintiff's ability to conduct business with these

third parties.  By revoking Plaintiff's membership in CAALA, Plaintiff's professional or economic relationships with his colleagues were not necessarily severed; instead, Plaintiff is simply barred from participating in CAALA events.  Membership in CAALA is neither a necessary nor a sufficient condition for partaking in the relevant lawyering profession, nor of having contact – economic or otherwise – with lawyers engaged in similar professional pursuits as Plaintiff.

Second, although Plaintiff does allege that he is now unable to participate in CAALA's $200/hour mediator program, the Court finds that Plaintiff has not alleged facts sufficient to show that CAALA Defendants intended to terminate Plaintiff's membership as a means to disrupt this economic relationship with a third party, nor that CAALA Defendants failed to act with reasonable care.

Accordingly, on the facts alleged and to the extent any portion of Plaintiff's Sixth and Seventh Claims remain, the Court GRANTS CAALA Defendants' Motion to Dismiss these claims for intentional IPER and negligent IPER, respectively, without leave to amend.

### F.    Plaintiff's Motions for Sanctions

Plaintiff moves for sanctions against William A. Munoz, Esq., jointly and severally with his firm, Freeman Mathis & Gary, LLP, for their alleged multiple failures to comply with Rule 11 of the Federal Rules of Civil Procedure.  (ECF No. 68).  Plaintiff also moves for sanctions for failure to comply with Rule 11 as to Attorney Laurence P. Posner, Esq., His Firm, and His Client, David Hoffman.  (ECF No. 69).  Defendants oppose at ECF Nos. 84, 85.

Federal Rule of Civil Procedure 11 permits courts to impose sanctions upon attorneys or unrepresented parties for submitting papers to a court that are frivolous, legally unreasonable, baseless, or filed for an improper purpose, such as harassment.  *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996).  All pleadings and other motions filed with a court must be signed by an attorney or the unrepresented party, certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry

reasonable under the circumstances": (1) the paper is not presented for an improper purpose; (2) the claims have a valid legal basis; and (3) there is factual support for the allegations. Fed. R. Civ. P. 11(b). Rule 11 imposes on attorneys an "objective standard of reasonableness under the circumstances." *Golden Eagle Dist. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986) (internal quotation marks omitted). But Rule 11 is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Greenberg v. Sala*, 822 F.2d 882, 887 (9th Cir. 1987) (quoting Fed. R. Civ. P. 11 advisory committee's note). Instead, "the central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Here, the Court finds that there is no evidence to suggest that either set of Defendants engaged in frivolous, legally unreasonable, or baseless behavior, nor did Defendants file papers for an improper purpose. Instead, the Court finds that the parties engaged in good faith with Plaintiff. Both CAALA's counsel and Hoffman's counsel were in consistent communication with Plaintiff and made various attempts to meet and confer with Plaintiff, some successful, some not. *See, e.g.,* (ECF Nos. 84 at 13; 85-1 at 4). None of these actions rise to the level of sanctionable behavior under Rule 11. Because of this, Plaintiff's Rule 11 motions (ECF Nos. 68, 69) are denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court orders as follows:

(1)   The Court GRANTS the CAALA Defendants' motions to strike Plaintiff's Second, Third, Sixth, and Seventh Claims against them;

(2)   The Court GRANTS Defendant Hoffman's motion to strike Plaintiff's Third, Sixth, and Seventh Claims against him;

(3)   The Court GRANTS with prejudice the CAALA Defendants' motions to dismiss Plaintiff's First Claim;

(4)   The Court GRANTS with prejudice the CAALA Defendants' motions to dismiss Plaintiff's Second Claim, insofar as conduct alleged in that claim is not covered by the Anti-SLAPP statute;

(5)     The Court GRANTS with prejudice the CAALA Defendants' motions to dismiss Plaintiff's Third Claim, insofar as conduct alleged in that claim is not covered by the Anti-SLAPP statute;

(6)     The Court GRANTS with prejudice the CAALA Defendants' motions to dismiss Plaintiff's Sixth and Seventh Claims, insofar as conduct alleged in those claims is not covered by the Anti-SLAPP statute; and

(7)     The Court DENIES Plaintiff's Motion for Sanctions.

Supplemental briefing in support of Defendants' request for attorney's fees and costs on their anti-SLAPP motion must be filed no later than fourteen (14) calendar days from the date of this order otherwise the Court will assume a non-filing party has decided to forego seeking attorney's fees and costs.  Any such supplemental briefing should not exceed five (5) pages for each Defendant.

**IT IS SO ORDERED.**

DATED:  March 14, 2024

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE